*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-1773

MARK FELDER, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

PEPCO, INTERVENOR.

Petition for Review of an Order of the District of Columbia Department of
Employment Services Compensation Review Board
(CRB-12-119)

(Submitted September 18, 2013                    Decided August 7, 2014)

*Allen J. Lowe* for petitioner.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Donna M. Murasky*, Deputy Solicitor General, and *Michael A. Milwee*, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

*Shawn M. Nolen* and *Kevin J. O'Connell* for intervenor.

Before MCLEESE, *Associate Judge*, and PRYOR and KING, *Senior Judges*.

MCLEESE, *Associate Judge*:  After petitioner Mark Felder was injured at work, his employer, intervenor Pepco, provided short-term disability benefits to

Mr. Felder pursuant to an employer-funded policy. Mr. Felder also sought disability benefits under the Workers' Compensation Act, D.C. Code § 32-1501 et seq. (2012 Repl.) ("WCA"), and Pepco agreed to pay Mr. Felder temporary total disability benefits under the WCA. For approximately six months, Mr. Felder received payments from both sources. Pepco subsequently contended that Mr. Felder was not entitled to payments from both sources for a single time period. The Compensation Review Board ("CRB") agreed with Pepco, holding that the short-term disability benefits provided under the employer-funded policy were "advance payments of compensation" under D.C. Code § 32-1515 (j) and that Pepco therefore was entitled to deduct the amount of those benefits from future disability payments made under the WCA. We affirm.

## I.

Mr. Felder is a cable-splicer mechanic for Pepco. In December 2009, Mr. Felder injured his right leg and lower back while responding to a service call. Although Mr. Felder continued to feel pain, he did not see a doctor for his injury until six months after the accident. The doctor diagnosed Mr. Felder with a herniated disc. In July 2010, Mr. Felder filed a claim for disability benefits under the WCA.

Because Mr. Felder did not seek medical attention until six months after the injury, Pepco initially disputed Mr. Felder's claim, pending further investigation. From July 5, 2010, to February 12, 2011, however, Mr. Felder received $9,464.70 under a short-term disability policy funded by Pepco. Pepco's short-term disability policy is not in the record, but it is undisputed that the policy operates to compensate employees for lost income due to disability.[1] The record does not clearly indicate the rate of compensation under the policy, but it appears that the policy does not provide full compensation. Although one exhibit suggests that the short-term disability policy pays 50% of an employee's wages, the payments to Mr. Felder under the policy appear to have been closer to a third of Mr. Felder's weekly wages.

Pepco later agreed to pay Mr. Felder temporary total disability benefits under the WCA for the periods from July 1, 2010, to December 31, 2010, and February 2, 2011, forward. By statute, payments under the WCA for temporary

---

[1] Employer-funded disability policies often provide that the benefits due under the policy may be reduced by the amount of any workers' compensation payment. *See* 9 Lex K. Larson, *Larson's Workers' Compensation Law* § 157.05[1][c], at 157-41, -42 (2014). The record does not indicate whether Pepco's short-term disability policy included such a provision.

total disability are set at 66-2/3% of the employee's average weekly wages. D.C. Code § 32-1508 (2). Thus, for the periods from July 1 to December 31, 2010, and February 2 to February 12, 2011, Mr. Felder received two distinct disability payments related to his injury.

Taking the position that Mr. Felder was not entitled to duplicative disability payments, Pepco claimed a credit of $9,464.70 against its ongoing payments of temporary total disability benefits. Mr. Felder challenged Pepco's claim, but an Administrative Law Judge ("ALJ") concluded that Pepco was entitled to the credit, because the payments under Pepco's short-term disability policy were advance payments of compensation.[2] The CRB affirmed.

---

[2] ALJ Anand K. Verma handled this matter. This court recently vacated and remanded in a case in which Mr. Verma had served as the ALJ. *Sandoval v. District of Columbia Dep't of Emp't Servs.*, No. 13-AA-545, 2014 WL 2884474, *1-3 (D.C. June 26, 2014). In *Sandoval*, the claimant and the District of Columbia both asked this court to vacate, based on allegations that ALJ Verma had not been a member of any bar, as required under applicable regulations. *Id.* The court granted that relief. *Id.* In the present case, the parties agree that there is no need to grant relief based on ALJ Verma's status, because the case turns on a pure question of law that this court can decide independent of ALJ Verma's ruling. We agree with the parties and therefore address the CRB's ruling on the merits.

## II.

An employer that makes disability payments under the WCA is entitled to credit for any advance payments of compensation the employer has made. D.C. Code § 32-1515 (j). This case presents a single legal issue: whether payments made from an employer-funded short-term disability policy to an employee who suffers a work-related injury are advance payments of compensation. The CRB concluded that such payments are advance payments of compensation, and we are required to defer to that conclusion as long as it is reasonable. *See generally, e.g.*, *Colbert v. District of Columbia Dep't of Emp't Servs.*, 933 A.2d 817, 820 (D.C. 2007) ("We will defer to the agency's interpretation of the statute . . . it administers unless its interpretation is unreasonable or in contravention of the language or legislative history of the statute . . . .") (internal quotation marks omitted). We find the CRB's conclusion reasonable.

## A.

The WCA does not expressly define the phrase "advance payments of compensation." It does provide, however, that "[a]ll payments prior to an award, to an employee who is injured in the course and scope of his employment, shall be

considered advance payments of compensation." D.C. Code § 32-1515 (j). Read literally, this provision would seem to cover the short-term disability payments at issue in this case, because (a) those payments were made before an award to Mr. Felder under the WCA, and (b) Mr. Felder concededly suffered a work-related injury. A literal reading of the provision, however, would lead to surprising consequences. For example, post-injury wages paid to an employee who suffered a job-related injury but continued to work would seemingly qualify as an advance payment of compensation, because the wages were "payments prior to an award, to an employee who [was] injured in the course and scope of his employment." *Id.* It is difficult to believe, however, that the legislature intended to give employers credit against disability benefits to reflect the payment of employees' earned wages.

The CRB has not given a broad, literal reading to the phrase "advance payment of compensation." First, the CRB has rejected the position that *all* post-injury, pre-award payments are advance payments of compensation. *See Lincoln Hockey LLC v. District of Columbia Dep't of Emp't Servs.*, 810 A.2d 862, 867 (D.C. 2002) (CRB affirmed ALJ's ruling that post-injury, pre-award salary payments made pursuant to contract were not advance payments of compensation under D.C. Code § 32-1515 (j), because pre-award salary payments reflected

preexisting contractual obligation). This court upheld the approach taken by the CRB in *Lincoln Hockey*. *Id.* at 867-70. Second, the CRB in this case identified two requirements that a pre-award payment must meet in order to constitute an advance payment of compensation: "the monies must [1] have been paid by the employer during a period of disability [2] to replace income lost by virtue of the injury . . . ."

In support of its conclusion that the payments at issue in this case qualify as advance payments of compensation, the CRB emphasized that denying employers a credit for such payments would permit employees to obtain "double-recovery." The CRB also distinguished such payments from benefits, such as vacation pay and sick pay, that are earned and based upon past service.[3] Finally, the CRB relied on a leading workers' compensation treatise. *See* 9 Lex K. Larson, *Larson's Workers' Compensation Law* § 157.01, at 157-3 (2014).[4]

---

[3] In a previous case, the CRB had treated sick-leave benefits as "advance payments of compensation." *See Gay v. Department of Emp't Servs.*, 644 A.2d 1326-28 (D.C. 1994). This court vacated the CRB's ruling and remanded for further explanation by the CRB. *Id.* at 1327-28. At least one ALJ has since ruled that earned sick-leave benefits are not "advance payments of compensation." *See Hopps*, OHA No. 03-057, 2003 WL 21346971, at *6 (D.C. Dep't Emp't Servs. Apr. 2, 2003).

[4] The CRB cited a passage from the Larson treatise that appears to refer to coordination of various *public* disability benefits, and thus does not appear to be

(continued . . .)

The CRB's treatment of payments under employer-funded short-term disability policies as advance payments of compensation fits comfortably within the broad language of D.C. Code § 32-1515 (j). The CRB's distinction between payments based solely on an injury and payments that the employee has earned through past work also finds support in the definitional provisions of the WCA. *See* D.C. Code § 32-1501 (defining "compensation" as "the money allowance payable to an employee . . . as provided for in this chapter," and "wages" as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury"). Finally, although different jurisdictions take different approaches to this issue, jurisdictions with provisions similar to § 32-1515 (j) also give employers credit in circumstances comparable to those of the present case. *See* 9 Larson §§ 157.05[1][b], 157.05D[1][b] (citing cases permitting employer credit for disability payments under private disability policies); 82 Am. Jur. 2d *Workers' Compensation* § 396 (2014) ("[M]any statutes

---

(. . . continued)

intended to address payments pursuant to a privately adopted, employer-funded disability policy. *Compare* Larson § 157.01 *with* Larson § 157.05. In any event, as we explain *infra*, the approach adopted by the CRB in this case is supported by a later discussion in the Larson treatise, as well as by substantial other authority. We also note that although the CRB expressed concern about the possibility that disabled employees might receive benefits exceeding their full salaries, it is not clear that the combined benefits that Mr. Felder received ever exceeded his full salary.

provide for the reduction of workers' compensation benefits to workers eligible for disability or wage-loss benefits that are 'employer-provided' or from an employer-funded source.") (footnotes omitted; citing cases); 100 C.J.S. *Workers' Compensation* § 705 (2014) ("[D]isability benefits[] may be allowed as a credit against an award of compensation.") (citing cases).[5]

## B.

Mr. Felder does not dispute that the payments at issue would qualify as advance payments of compensation under the approach adopted by the CRB. Rather, he advances several objections to the CRB's approach. We are not persuaded by those objections.

First, Mr. Felder relies on the 1998 repeal of D.C Code § 36-308 (9). That provision stated:

> In no event shall the total money allowance payable to an
> employee . . . (1) [a]s compensation for an injury or death

---

[5] There is some support for the principle that employers should not be granted credit for payments reflecting collectively bargained benefits, including supplemental disability benefits. 100 C.J.S. *Workers' Compensation* § 705. The record does not indicate whether Pepco's short-term disability policy was collectively bargained, and Mr. Felder does not raise the issue. We therefore express no view on the issue.

under this chapter; (2) as federal old age[] and survivors insurance benefits; and (3) from employee benefit plans subject to the Employee Retirement Income Security Act of 1974 . . . and such income maintenance plans solely funded by the employer . . . exceed in the aggregate the higher of 80% of the employee's average weekly wage or the total of federal payments and employee benefits plan payments. In the event the total aggregate money allowance payable to an employee . . . exceeds this limitation, the amounts otherwise payable as compensation or death benefits under this chapter shall be reduced accordingly.

D.C. Code § 36-308 (9) (1997 Repl.), *repealed by* Workers' Compensation Amendment Act of 1998, § 2 (e)(4), 46 D.C. Reg. 891, 894 (1999).[6] Mr. Felder argues that this provision applied to payments under employer-funded short-term disability policies, because such policies are employer-funded income-maintenance plans. Moreover, Mr. Felder contends, this provision specified how such payments were to be coordinated with workers' compensation payments: both could be recovered as long as the total recovery did not exceed 80% of the employee's weekly salary. Finally, Mr. Felder reasons, when the D.C. Council repealed this cap, it must have thereby intended to permit full recovery of both kinds of payments. We conclude otherwise.

---

[6] Section 2 (e)(4) of the Workers' Compensation Amendment Act repealed § 9 (i) of the District of Columbia Workers' Compensation Act of 1979, 27 D.C. Reg. 2503, 2517 (1979). In his brief, Mr. Felder refers to § 36-308 (g), which was the version of Section 2 (e)(4) in the 1981 Code. In this opinion, we refer to § 36-308 (9).

The 80% cap imposed by § 36-308 (9) extended broadly to many different kinds of payments, several of which (such as old-age benefits, retirement benefits, or employer-sponsored income-maintenance plans not tied to injury) would not be advance payments of compensation within the meaning of D.C. Code § 32-1515 (j) as construed by the CRB. On the other hand, § 32-1515 (j), as construed by the CRB, applies more narrowly to post-injury, pre-award payments that replace income lost as a result of injury. Well-settled principles of statutory construction suggest that the more specific limitation in § 32-1515 (j) (employer receives full credit for advance payments of compensation) would prevail over the more general limitation imposed under § 36-308 (9) (workers' compensation benefits and various other benefits may not together exceed 80% of income). *See generally, e.g.*, *Connerton, Ray & Simon v. Simon*, 791 A.2d 86, 88 (D.C. 2002) ("When a statute contains potentially inconsistent provisions, the more specific provision must govern or control . . . .") (internal quotation marks omitted). Thus, even before its repeal, § 36-308 (9) would not naturally have been interpreted as superseding the requirements of § 32-1515 (j). In other words, if payments under an employer-funded disability policy qualified as advance payments of compensation under § 32-1515 (j), an employer would have been entitled to full credit for those payments, notwithstanding the provision in § 36-308 (9) generally

permitting multiple recovery of workers compensation benefits and other benefits as long as the overall recovery did not exceed 80% of the employee's salary.

The repeal of § 36-308 (9) reflected a legislative decision to more freely permit multiple recovery with respect to the broad categories of benefits governed by § 36-308 (9).  That legislative judgment, however, does not logically imply an intent to permit multiple recovery with respect to the narrow category of advance payments of compensation governed by § 32-1515 (j).  We therefore find reasonable the CRB's conclusion that the repeal of § 36-308 (9) was not inconsistent with providing Pepco with full credit for its payments to Mr. Felder under its employer-funded short-term disability policy.

Although Mr. Felder contends that the legislative history of the repeal of § 36-308 (9) supports his view, we disagree.  Mr. Felder relies upon a memorandum from a lawyer for the District of Columbia to another District of Columbia official, commenting on the act that included the repeal of § 36-308 (9). Specifically, the memorandum says that the repeal "means that employees will no longer lose compensation benefits because they are also collecting social security or retirement benefits."  It is unclear what weight, if any, should be given to this document. *Cf. Quiban v. United States Veterans Admin.*, 724 F. Supp. 993, 1001

n.16 (D.D.C. 1989) ("[I]nternal executive memoranda . . . [are] technically not 'legislative history' in the traditional sense."). In any event, the document does not support Mr. Felder's argument, because it refers only to "social security or retirement benefits," and says nothing about whether the repeal of § 36-308 (9) was intended to affect payments under employer-funded short-term disability policies.

Second, Mr. Felder contends that the CRB's decision in this case contradicts the earlier decision in *Bly*, CRB No. 08-109, 2008 WL 4335650 (D.C. Dep't Emp't Servs. Aug. 27, 2008). We see no basis for reversal on this ground. One of the issues raised in *Bly* was whether the employer was entitled to credit for payments under a short-term disability policy. *Id.* at *3. In a single sentence, the CRB concluded that that issue was "moot" given the repeal of § 36-308 (9). *Id.* The CRB did not cite or discuss § 32-1515 (j), however. *Id.* In the present case, the CRB did explain its views as to the interaction between § 32-1515 (j) and repealed § 36-308 (9). *See also Gillis*, CRB No. 13-115, 2013 WL 6699918, at *3 (D.C. Dep't Emp't Servs. Nov. 19, 2013) (discussing interaction between CRB's ruling in this case and CRB's prior decision in *Bly*). We find the CRB's explanation of its rulings in this case and in *Bly* to be reasonable. *Cf., e.g.*, *District of Columbia v. American Univ.*, 2 A.3d 175, 181 (D.C. 2010) (upholding agency interpretation

that differed from earlier interpretation, where there was adequate explanation for agency's interpretation).

Finally, Mr. Felder argues that short-term disability payments cannot reasonably be treated as advance payments of compensation, because the WCA does not provide procedures by which employers could take such a credit. To the contrary, § 32-1515 (j) provides that employers can obtain reimbursement for such payments from "any unpaid installment or installments of compensation due," which is what Pepco did in the present case.

The order of the CRB is

*Affirmed.*