UNITED STATES, Appellee,

v.

Scott E. FALK, Airman First Class,
U.S. Air Force, Appellant.

No. 98–0064.
Crim.App. No. 32456.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 6, 1998.

Decided May 28, 1999.

Opinion Partially Withdrawn
Sept. 30, 1999 on Petition
for Reconsideration.
See 50 MJ 396.

See Appendix at 50 MJ 409.

Sullivan and Crawford, JJ., filed dissenting opinions.

Sullivan, J., filed opinion dissenting to denial of reconsideration.

EVERETT, S.J., delivered the opinion of the Court, in which COX, C.J., and GIERKE, J., joined. SULLIVAN and CRAWFORD, JJ., filed dissenting opinions.

For Appellant: *Colonel Douglas H. Kohrt* (argued); *Captain W. Craig Mullen* (on brief).

For Appellee: *Major Martin J. Hindel* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on

brief); *Colonel Anthony P. Dattilo, Major Ronald A. Rodgers,* and *Captain Mitchel Neurock.*

Senior Judge EVERETT delivered the opinion of the Court.

Appellant, Airman First Class Scott E. Falk, United States Air Force, was tried by military judge alone at a general court-martial convened at Travis Air Force Base, California, on October 7, 1996. Pursuant to his pleas, Falk was found guilty of 2 specifications of conspiracy to commit larceny, larceny, making a false claim, larceny of mail matter, and possessing child pornography, in violation of Articles 81, 121, 132, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 921, 932, and 934, respectively. The military judge sentenced Falk to a dishonorable discharge, confinement for 42 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed the findings and sentence.

We granted review of these issues:

I

WHETHER APPELLANT'S PLEA TO SPECIFICATION 1, CHARGE I, WAS PROVIDENT IN THAT HIS CONDUCT WAS NOT IN VIOLATION OF 18 USC § 2252 BECAUSE HE DID NOT POSSESS THREE OR MORE BOOKS, MAGAZINES, PERIODICALS, FILMS, VIDEO TAPES, OR OTHER MATTER WHICH CONTAINED ILLEGAL IMAGES.

II

WHETHER THE APPLICATION OF ARTICLES 57(a) AND 58b, UCMJ, VIOLATES THE *EX POST FACTO* CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO APPELLANT.

The first issue concerns the child pornography charge and poses two questions. One is whether appellant's guilty plea was improvident because of the great confusion on the part of all involved—including the Article 32 [1] investigating officer, counsel, the military judge, and later, appellate counsel—about the statute under which appellant was being tried. The second question is whether any statute in effect at the time of Falk's alleged misconduct prohibited what he did. To understand and answer the two questions requires the consideration of several statutes and then an examination of this case's confusing procedural history.

I

A. STATUTES INVOLVED

Article 134 of the UCMJ prohibits conduct of a servicemember which is: (a) to the prejudice of good order and discipline in the armed forces; (b) service discrediting; or (c) a crime under generally applicable federal penal statutes. Some conduct that falls into one or both of the first two categories may also be a crime under Title 18 of the United States Code; and in that event, the conduct is punishable whether committed by a servicemember or a civilian. Therefore, an accuser in preferring charges, or trial counsel in prosecuting, may opt to rely on the generally applicable federal penal statute rather than to proceed under the first two clauses of Article 134. In that way, there is no need to prove that the accused's conduct was contrary to good order and discipline or was service discrediting.

Title 18 USC contains § 2252, which Congress enacted in 1978, and which has been subsequently amended from time to time. At the time of Falk's trial and alleged offense, § 2252 provided, *inter alia,* that it was a crime to "knowingly possess 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction" of child pornography.[2]

1. Uniform Code of Military Justice, 10 USC § 832.

2. 18 USC § 2252(a)(4) made it a crime to
    (4) either—

(A) in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the Govern-

Effective on September 30, 1996, Congress added to Title 18 an additional section, § 2252A, which made it a crime to "possess[ ] ... any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography." [3] At the time, no change was made in § 2252(a); instead § 2252A was a new section added to supplement the existing provisions of Title 18. Presumably, it was designed to encompass some additional means of possessing child pornography that were not already covered by existing statutes; otherwise, there would have been no need to add a new section to Title 18. The failure of some of those involved in this case to recognize that 18 USC § 2252 was supplemented—rather than replaced or amended—by the enactment of § 2252A is one source of the apparent confusion in the review of this case.

### B. PROCEDURAL HISTORY

In the Spring of 1996, the Air Force Office of Special Investigations (OSI) conducted a criminal investigation of Falk as a result of larceny allegations. During this investigation, Falk's wife informed the OSI that Falk had stored on the hard drive of his computer numerous pictures of children engaging in sexually explicit conduct. A search warrant was executed, and on June 5, 1996, 126 images depicting minors engaging in various sex acts were downloaded from Falk's com-

puter hard drive. Before downloading the images from Falk's computer, investigators found several computer directories that contained images of child pornography. Most of these images were filed in a directory entitled "pre-teen." The minors who were depicted while engaged in child pornography were ages 6 to 16.

Charges were originally preferred against Falk on July 2, 1996, pursuant to RCM 307, Manual for Courts–Martial, United States (1995 ed.). At that time, Charge I consisted of a single specification, which read:

> Violation of the UCMJ, Article 134 ... Specification: In that AIRMAN FIRST CLASS SCOTT E. FALK, United States Air Force, 60th Aircraft Generation Squadron, did, at Travis Air Force Base, California, on or about 5 June 1996, knowingly possess three or more pictures which contain a visual depiction involving the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, on land or a building owned by or otherwise under the control of the Government of the United States, to wit: 9 Vandenberg Court, Travis Air Force Base, California.

Presumably, appellant was being charged at that point with violating one or both of the first two clauses of Article 134, conduct prej-

---

ment of the United States, ... knowingly possess 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction; or
(B) knowingly possess 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(ii) such visual depiction is of such conduct.

3. 18 USC § 2252A(a)(5) stated that any person who
(5) either—
(A) in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise

used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography; or
(B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer
shall be punished as provided in subsection (b). Sections 2252(a)(4) and 2252A(a)(5) were both amended on October 30, 1998, to reduce the number of prohibited images from three to one. *See* Pub.L. 105–314, Title II, §§ 202(a)(1) and 203(b)(1), 112 Stat. 2977–78.

udicial to good order and discipline or service discrediting. In any event, nothing in the specification referred to § 2252 or to any other section of Title 18; nor did it in any way allege that the third clause of Article 134 had been violated.

A little more than 1 month later, on August 14, 1996, a report was submitted by the officer who had conducted the investigation required by Article 32.[4] As to Charge I, which concerned child pornography, the report recommended that

> Specification 1 of Charge I should make reference to 18 USC § 2252 as being the specific United States Code which was allegedly violated by A1C Falk.

A copy of § 2252 was an exhibit to the investigating officer's report, so that anyone reading the report would have ready access to the statute it cited.

Since Charge II in the original charge sheet also alleged that Falk violated Article 134, by stealing some credit cards from the mail, the investigating officer also recommended that

> Charge I should consist of two specifications, the first regarding the possession of child pornography, and the second specification in violation of Art 134 should be what is currently the specification of Charge II.

The investigating officer's report contained a section concerned with "elements of the offenses." Among the elements listed for Charge I—the child pornography charge— were that the conduct be in violation of either or both of the first two clauses of Article 134. However, the discussion of the "elements" contained no recommendation that the specification under Charge I be amended to include allegations that Falk's conduct had been contrary to good order and discipline or service discrediting; nor did it refer to the report's recommendation or to § 2252.

At some time within the next 12 days, the words "in violation of § 2252" were added to what had been changed to specification 1 of Charge I in order to comply with the investigating officer's recommendation. The hand-

written modification is initialed "LS," who we assume is Captain (CPT) Lara R. Stutz, assistant trial counsel.

Then, on August 26, 1996, the staff judge advocate sent the convening authority a pretrial advice memorandum in accordance with RCM 406. The memorandum acknowledged the recommendation by the investigating officer to add § 2252 to the charge sheet. The memorandum also alerted the convening authority to the fact that the changes had already been made at the "Wing level," and recommended that,

> with regard to the original specification of Charge I, ... the word "each" be inserted after the word "which" and before the word "contain," the words "the production of which involved" be substituted for the word "involving."

The next day, August 27, 1996, the convening authority referred the charges in accordance with RCM 601 and approved the foregoing modifications to the charge sheet. Again, handwritten modifications were made, but this time by "RD." We can only speculate that "RD" is CPT Robin Donato, trial counsel in the case. The final version of Specification 1 of Charge I read as follows:

> knowingly possess three or more pictures which contain a visual depiction the production of which involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, on land or a building owned by or otherwise under the control of the Government of the United States, to wit: 9 Vandenberg Court, Travis Air Force Base, California, in violation of 18 USC § 2252.

Sometime around September 4, 1996, defense counsel received a copy of a document purporting to contain the charges that had been referred, together with the advice of the staff judge advocate. However, defense counsel's copy of the charge sheet did not include the modifications directed by the convening authority. On approximately September 26, 1996, after the Government discovered its error, an accurate copy of the charge

---

4. During the Article 32 investigation, the officer originally appointed to conduct the investigation was replaced, and the report was prepared by the second officer.

sheet, as it had been modified, was sent to the defense counsel.

When a pretrial session was held pursuant to RCM 802, the trial counsel described in this manner the history of the charges on which Falk was to be tried:

> Charge I, Specification 1, the change is striking the word "involving" and adding "the production of which involved" was made at referral. Adding at the end "in violation of 18 USC 2252." This change to Charge I, Specification 1, was made to a copy of the charge sheet based on the recommendation of the Investigating Officer, probably improperly, Your Honor, by this office when we were preparing the Article 32 package for the numbered Air Force. When the numbered Air Force prepared the Pretrial Advice for the Convening Authority, they assumed these changes were made on the original charge sheet and adopted them in their pretrial advice. Two weeks ago we discovered this change was not made to the original charge sheet which was served on the Accused on 30 August 1996. Therefore, I made the pen and ink change and faxed it to Captain Hatch, the Accused's Defense Counsel, on 26 September 1996.

Prior to Falk's trial, which took place on October 7, 1996, the trial counsel provided the military judge with proposed instructions on the elements of specification 1 of Charge I—the specification which concerns child pornography. These instructions conformed much more to the language of § 2252A—which had not been enacted at the time of the alleged crime—than to the language of § 2252.[5] However, attached to the proposed instructions was a copy of § 2252. During the providence inquiry, the military judge did not use the language of § 2252 but gave an explanation of specification 1, Charge I, in terms that followed the proposed instructions provided by trial counsel. With that explanation before him, and having previously entered into a stipulation of fact, Falk entered his plea of guilty.

## II

### A. The Plea was Improvident

On appeal, Falk claims that his plea was improvident—because it was based on a misunderstanding of the law as a result of the military judge's misleading explanation and because the facts stipulated to did not establish guilt under the statute in effect at the time. In connection with his second contention, Falk emphasizes that he stipulated to possession of only a single computer containing many images in its hard drive, and that § 2252A was not enacted until long after charges had been preferred. The Government not only disputes appellant's contention that his conduct was not a crime under the statute then in effect, but also insists that his guilty plea waived any rights he might otherwise have to raise any issue as to the adequacy of the stipulated facts to establish that an offense had been committed under § 2252. The Court of Criminal Appeals accepted the Government's view that a waiver had occurred.

We "will not 'speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas.'" *United States v. Faircloth*, 45 MJ 172, 174 (1996) (quoting *United States v. Johnson*, 42 MJ 443, 445 (1995)). However, "[i]n determining the providence of [an] appellant's pleas, it is uncontroverted that an appellate court must consider the entire record in a case." *Johnson, supra* at 445 (citing *United States v. Bester*, 42 MJ 75 (1995)).

From the recitation of the events that led up to Falk's plea of guilty, it is apparent that great confusion existed with respect to the elements that constituted the crime with which Falk was charged. The military judge advised Falk pursuant to the instructions proposed by trial counsel; and those instructions, although corresponding substantially to the allegations of the specification as it had been amended prior to trial, did not match well with the provisions of § 2252.[6] Obvious-

---

5. These proposed instructions were marked as Appellate Exhibit VII and are part of the record.

6. The relevant portion of the instructions reads: "That, on or about 5 June 1996, at Travis Air

ly, the trial counsel had not noticed the discrepancy when he attached a copy of § 2252 to the instructions; nor did the military judge when he gave the instructions—apparently without comparing them with the language of the statute. Additional confusion arises because, only a week before trial, § 2252A was enacted, whose provisions fit much more closely the facts stipulated to by Falk than did the provisions of § 2252. Whether the trial counsel was even aware of the statute so recently enacted is questionable. However, appellate defense counsel have properly complained that Falk was convicted under a statute that did not exist at the time of his alleged offense.

In any event, the picture of confusion that is painted by the record leads us to the conclusion that, in fairness, the plea must be held improvident and the conviction set aside. Indeed, to hold that the plea was provident could hardly conform with the premise that an accused who pleads guilty has some understanding of why the facts he has admitted establish his guilt. Even if the evidence had been sufficient to establish guilt, that circumstance would not be sufficient to compel the conclusion that Falk's plea was provident.

### B. The Stipulated Facts are Insufficient to Establish Guilt

When a guilty plea is held improvident, the question presents itself whether the Government can thereafter obtain a conviction in a contested trial. To us, it is apparent from the stipulated facts that, if a trial were held, the evidence would be insufficient to establish guilt under § 2252; and for this reason as well, the plea of guilty was improvident.[7]

We reject the Government's contention that the language of § 2252 embraces the conduct admitted by Falk. In interpreting § 2252, we must look first to the plain language of the statute and construe its provisions in terms of its object and policy, as well as the provisions of any related statutes, in order to ascertain the intent of Congress; if the statute is unclear, we look next to the legislative history. *See United States v. Hockings*, 129 F.3d 1069, 1071 (9th Cir.1997) (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 830 (9th Cir.1996)); *see also United States v. Scranton*, 30 MJ 322, 324 (CMA 1990) (citing *Ladner v. United States*, 358 U.S. 169, 173, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In the process, absent evidence to the contrary, the ordinary meaning of the words used expresses the legislative intent. *See, e.g., United States v. Inthavong*, 48 MJ 628, 631 (Army Ct.Crim.App.1998) (citing *United States v. Easter*, 981 F.2d 1549, 1558 (10th Cir.1992)). The interpretation of a statute and its legislative history is a question of law to be reviewed *de novo*. *See Quiban v. United States Veterans Administration*, 724 F.Supp. 993, 1001 (D.D.C.1989); *see also Hockings, supra* at 1070; *United States v. Weatherspoon*, 49 MJ 209 (1998).

The Government has made the argument that the reference in § 2252 to "3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction" makes criminal Falk's possession of 126 images on one computer hard drive.[8] We disagree. A computer hard

---

Force Base, California, the Accused knowingly possessed three or more pictures which contain a visual depiction involving the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct." Falk pleaded guilty to possessing "three or more pictures."

**7.** It is irrelevant how similar the language of § 2252A is to the facts to which Falk stipulated, because that section had not been enacted at the time of his misconduct. It is also irrelevant whether or not Falk believed he was guilty of violating § 2252, as to which the military judge had given erroneous instructions. Falk's guilty

plea is improvident because the military judge instructed him on elements other than those contained in the statute which he was charged with violating, and therefore, RCM 910(e) simply was not satisfied.

**8.** The Government argues that the Ninth Circuit's holding that Grafics Interchange Format (GIF) files are "visual depictions" under § 2252 is reason enough for this Court to find that appellant's files on his disk were images under § 2252 as well. *See United States v. Hockings*, 129 F.3d 1069 (9th Cir.1997). GIF files are a type of computer file that stores the data necessary to produce a picture or image for the viewer

drive is more analogous to a single "book," which contains many chapters, words, and images.[9]

Section 2252 requires the possession of three or more "matters" which "contain" one or more visual depictions. The word "contain" suggests that the visual depiction must have some sort of host, such as a hard copy picture, or a book, or even a computer disk. Therefore, a person may be convicted under § 2252 for possessing 3 or more photographs, but may not be convicted for possessing 1 book with 20 pictures of child pornography in it. Whether Congress foresaw this result, we are unaware. Perhaps the premise was that someone in possession of 3 pictures, separately acquired, had a more serious interest in pornography—and so presented a greater danger to children—than someone who acquired a single book or magazine that contained several pornographic pictures. Perhaps § 2252 was worded to prevent the prosecution of someone in unwitting possession of a single book with many pictures depicting child pornography. In any event, the language of § 2252 calls for this interpretation.

Furthermore, the legislative history supports our conclusion because it shows that § 2252A was added to Title 18 in order to clear up the ambiguities and omissions in coverage that arise from the most obvious construction of § 2252. Congress' purpose underlying § 2252 was to "prohibit the sexual exploitation of children," in general; Congress' intent in adding § 2252A to Title 18 was because it was "needed," as reflected in this statement made when the bill which later became § 2252A was introduced:

> This legislation is needed due to technological advances in the recording, creation, alteration, production, distribution and

transmission of visual images and depictions, particularly through the use of computers.

S.Rep. No. 358, 104th Cong., 2d Sess., 1996 WL 506545 at p. 9, and in:

> Current law prohibits the possession of three or more books, magazines, periodicals, films, video tapes or other material which contains any visual depiction of a minor engaging in sexually explicit conduct. Since a single computer disk is capable of storing hundreds of child pornographic images, current law effectively permits the possession of substantial collections of child pornography, a loophole that will be closed under this section.

*Id.* at 12.

We do not dispute that, in some cases, "Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases," and that, in turn, "an amendment to a statute does not necessarily indicate that the unamended statute mean[t] the opposite." *Hockings,* 129 F.3d at 1072 (quoting *Hawkins v. United States,* 30 F.3d 1077, 1082 (9th Cir.1994)). We do, however, disagree with the Government's position that § 2252A was enacted only for clarification. The language in the legislative history clearly shows that Congress' purpose *was* to close the "loophole" through which Falk has fallen. While we have no fondness for "loopholes" which allow one to avoid responsibility for one's behavior, our system of law does not allow anyone to be convicted of a crime under a law enacted after the fact, or to plead guilty to a crime not supported by the admitted facts.

Even if § 2252 may appear ambiguous and open to more than one interpretation, we will not expand the scope of this criminal statute beyond the meaning an average citizen would understand and attribute to its plain lan-

---

using the computer. *Id.* at 1071. The Government also points to *United States v. Smith,* 795 F.2d 841 (9th Cir.1986), which held that possession of unprocessed film containing pictures of child pornography was criminal under § 2252 because "the exclusion of unprocessed film ... would allow unrestricted interstate commerce in child pornography so long as the pornography was still in the form of undeveloped film" and "[s]uch a loophole is inconsistent with congressional intent." *Id.* at 846–47.

We disagree. While both cases address what constitutes "other matter" under § 2252, Falk is not denying that a computer hard drive or a computer disk would be considered "other matter." What Falk is arguing is that he did not possess a quantity of 3 or more "other matters." Neither case cited by the Government addresses this issue.

9. Note that "any visual depiction" is used to mean either one or more image.

guage. *See McBoyle v. United States*, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931). As the Supreme Court has stated:

> Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.

*Id.* at 27, 51 S.Ct. 340.

We conclude that a computer hard drive is a "disk," according to commonly used language, and constitutes a single "matter" for purposes of § 2252.[10] Even if many images of pornography are contained in a single hard drive, § 2252 has not been violated; and a single hard drive with three or more images is a single "matter." We hold, therefore, that Falk's conduct is not punishable under § 2252—even though if the same conduct had occurred after the enactment of § 2252A, on September 30, 1996, it would have been punishable under the later statute. For lack of a "substantial basis" in law, Falk's guilty plea must be set aside. *See United States v. Prater*, 32 MJ 433, 436 (CMA 1991).

### III

Regarding Issue II, we note that all of Falk's remaining offenses were committed between May and December 1995, well before the effective date of the amendment to Article 57(a). In addition, his sentence included total forfeitures, so Article 58b does not apply. *See United States v. Saia*, 48 MJ 461 (1998). Thus, appellant is entitled to relief under *United States v. Gorski*, 47 MJ 370 (1997).

### IV

The decision of the United States Air Force Court of Criminal Appeals is reversed as to specification 1 of Charge I and the sentence. The finding of guilty to specifica-

tion 1 of Charge I and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing on specification 1 of Charge I and the sentence may be ordered.

Execution of the forfeitures and reduction prior to the date of the convening authority's action are hereby declared to be without legal effect. Any forfeitures collected prior to that date, and any pay and allowances withheld because of the premature reduction in grade, will be restored. This matter is also referred to the Judge Advocate General of the Air Force for appropriate action.

SULLIVAN, Judge (dissenting):

I would affirm this case. Appellant pleaded guilty to violating 18 USC § 2252 (1994), as follows:

CHARGE I: VIOLATION OF THE UCMJ, ARTICLE 134

SPECIFICATION 1:

In that AIRMAN FIRST CLASS SCOTT E. FALK, United States Air Force, 60th Aircraft Generation Squadron, did, at Travis Air Force Base, California, on or about 5 June 1996, *knowingly possess three or more pictures which contain a visual depiction the production of which involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct,* on land or a building owned by or otherwise under the control of the Government of the United States, to wit: 9 Vandenberg Court, Travis Air Force Base, California, in violation of 18 USC § 2252. [Emphasis added.]

He agreed to the following stipulation of fact concerning this charge:

MJ: 14. On or about 3 June 1996, SSgt Nash interviewed Stacey Falk, the Accused's wife, pursuant to an investigation he was conducting. During the course of that interview, Mrs. Falk informed SSgt Nash that her husband had child pornography on his computer which was located in their home at 9 Vandenberg Court. With the exception of Mrs. Falk playing Solitaire on the computer, A1C Falk exclusive-

---

10. Microsoft's computer handbook describes a computer disk as the following: "Just as a directory is a group of files, a drive, which is always represented by a drive letter, is a group of directories. Drives are usually associated with a piece of hardware called a disk. A *disk* is a flat piece of metal or plastic on which data is stored. The most common types of disks are the *hard disk*, which is inside your computer, and the *floppy disk* and *computer disk*, which you insert into a slot either in or next to your computer.... Your hard disk, or at least part of it, is called drive C." *Microsoft Windows for Workgroups & MS–DOS, User's Guide* (1994).

ly used the computer. SSgt Nash obtained a search authorization to seize and search the computer and Special Agent Timothy Hanners, a Computer Crime Investigator with the Air Force Office of Special Investigations, subsequently searched the contents of the Accused's personal computer.

15. A1C Falk had hundreds of photographic images stored on his computer. He neatly categorized these images into directories on his computer labeled "Children," "Preteen," "Weird," and "XXX." On or about 5 June 1996, A1C Falk possessed 126 photographic images depicting child pornography, most of which were stored on his computer under the directory "Preteen." Many of these images graphically depicted children engaged in sexually explicit conduct including sexual intercourse, sodomy, and masturbation. The remainder of the images depicted the genitals or pubic areas of the children in a lascivious manner. A1C Falk knew that he had these images in his possession and he knew that they depicted children engaged in sexually explicit conduct.

16. Prosecution Exhibit 3 consists of hard copies of the photographic images depicting child pornography which were downloaded from the Accused's computer. Lieutenant Colonel Stephen Boos, a pediatrician assigned to the ... David Grant Medical Center at Travis Air Force Base, has reviewed the photographic images contained in Prosecution Exhibit 3 and confirmed that all depict children under the age of 18 years. Dr. Boos estimates that the images depict children ranging in age from approximately six years through approximately sixteen years.

Now, are all those previous paragraphs true and correct to the best of your knowledge and belief, and do you wish to admit that they are true?

ACC: Yes, Your Honor.

Finally, appellant explained his offense to the military judge as part of the guilty plea inquiry. He stated:

With regard to Charge I, Specification 1, I downloaded some pictures off the Internet after gaining access. *When sorting through these files* I determined that I did possess child pornography which I then filed away into their respective directories.

(Emphasis added.)

I disagree with the majority opinion for several reasons. *See generally United States v. Harrison,* 26 MJ 474, 476 (CMA 1988) (post-trial speculation as to facts supporting offense not countenanced). First, appellant pleaded guilty and admitted violating 18 USC § 2252 (1994), as charged. He specifically admitted his possession of 126 computer files of child pornography; his organization of the files containing these pictures into four different directories on his computer; and that his conduct in government housing violated 18 USC 2252(a)(4)(B) ("knowingly possess 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction .... involv[ing] the use of a minor engaging in sexually explicit conduct."). A conviction in similar circumstances under this same statutory provision was upheld in *United States v. Hockings,* 129 F.3d 1069 (9th Cir.1997) (eight computer files). In my view, a computer picture stored in a file on a hard drive *is in a container for visual depictions* under 18 USC § 2252 ("other matter which contain any visual depiction"). A computer has the capacity to contain a full library of books and pictures stored in the files of its hard drive.

In addition, assuming appellant's admitted conduct of possessing these computer pictures did not violate 18 USC 2252(a)(4)(B) (1994), it clearly violated another subsection of that same statute, subsection (a)(2). This subsection had no multiple container requirement. It states that any person who

(2) *knowingly receives,* or distributes *any visual depiction* that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, *by an means including by computer,* or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct;

shall be punished under the statute. (Emphasis added).

Here again, appellant admitted to the military judge:

> With regard to Charge I, Specification 1, I downloaded some pictures off the Internet after gaining access. When sorting through these files I determined that I did possess child pornography which I then filed away into their respective directories.

Affirmance of his conviction based on his guilty–plea admissions to a closely related offense is permitted under *United States v. Felty*, 12 MJ 438, 441–42 (CMA 1982); *see generally* Art. 59(a), UCMJ, 10 USC § 859(a).

Finally, even if appellant's admitted conduct did not violate any subsection of 18 USC § 2252 (1994), I would still affirm his conviction under Article 134, UCMJ, 10 USC § 934. Possession of 126 computer images of child pornography, lasciviously organized into four directories on a personal computer, in government housing on a military post, is *per se* service discrediting conduct in my view. Affirmance of his conviction for this conduct under Article 134 is warranted, even if no civilian offense was established. *See United States v. Gallegos*, 41 MJ 446 (1995) (manifest example of conduct prejudicial to good order and discipline affirmed as offense under Article 134, despite failure to constitute civilian offense).

CRAWFORD, Judge (dissenting):

When investigative officers searched appellant's home in June 1996, they seized not only his computer, which contained 126 files of child pornography divided into 4 directories he had labeled "Children," "Pre-teen," "Weird," and "XXX"; they also seized one picture of verified child pornography and subscription information for the pornographic bulletin-board system appellant was running from his home.

In the end, appellant was only charged with a single specification of possession of child pornography, in addition to his larceny, conspiracy, and false claim offenses. Pursuant to a pretrial agreement, appellant pled guilty to all the charges and was sentenced only to a dishonorable discharge, 42 months' confinement, total forfeitures, and a reduction to the lowest rank. He fared well.

Appellant now argues that his plea to the child pornography offense was improvident and that this Court should dismiss the conviction and reassess his sentence. For the following reasons, I believe that we should not do so.

By pleading guilty, appellant waived a trial on the facts and made a conscious decision to relieve the Government of its responsibility to prove all of the elements of its case. *See United States v. Faircloth*, 45 MJ 172 (1996). Essentially, a plea of guilty by an accused changes the substance of the court-martial. Further, "[b]ecause [appellant] pleaded guilty, the issue must be analyzed in terms of providence of his plea, not sufficiency of the evidence," changing the substance of our review as well. *Id.* at 174.

Thus, the bar for reversing a military judge's finding that a plea was provident must be high. As this Court has noted, this rule is "rooted, in part, in our respect for the obvious tactical decision by an accused and his counsel to forgo possible defenses." *United States v. Roane*, 43 MJ 93, 99 (1995), citing *United States v. Logan*, 22 USCMA 349, 350, 47 CMR 1, 2 (1973).

Appellant chooses now to raise a defense he could have raised before the military judge at his trial on October 7, 1996. He even failed to mention it in his November 22 response to the Staff Judge Advocate Recommendation on his court-martial. That defense hinges on an amendment to the federal child pornography statute proposed at a Senate Judiciary Committee hearing on June 4, 1996, written into Senate Report No. 104–358 on August 27, 1996, debated on the Senate floor on September 28, 1996, and signed into law on September 30, 1996. It is important to note that, although appellate defense counsel at oral argument conceded that the trial defense team "missed the boat," appellant does not claim ineffective assistance of counsel but, rather, improvidence of his plea.

The mere possibility of a defense that appellant could have raised was that, because the law in June 1996 stated that it was a crime to knowingly possess "3 or more books, magazines, periodicals, films, video tapes, or other matter" which contained child pornography, and because appellant was only charged with possessing one hard drive containing child pornography, his charged conduct did not constitute a crime under 18 USC § 2252(a)(4)(A) (1994). The 1996 amendment on which appellant pins this argument changed the law to prohibit knowing possession of "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography." *See* 18 USC § 2252A(a)(5)(A) (1996). It is appellant's contention that by amending the law clearly to include his behavior, Congress somehow admitted that the law had not previously encompassed it.

However, what appellant ignores in making this argument, and the majority undervalues in agreeing with it, is that "Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases. Thus, an amendment to a statute does not necessarily indicate that the unamended statute meant the opposite." *Hawkins v. United States,* 30 F.3d 1077, 1082 (9th Cir.1994). The language of the Senate Report on which appellant relies does not necessarily mean what he wants it to mean—a determination that should have been left to the military judge.

Had appellant raised this defense in the first place, the Government would have been forced to prove that the 4 directories of child pornography, or possibly the 126 files of child pornography, on his hard drive constituted "other matter" as used in the preamendment statute. This is not an absurd argument and may, in fact, have been considered by appellant and his trial defense team in deciding to sign the pretrial agreement.

A similar defense as that which appellant now raises was tried and rejected by the Supreme Court in *United States v. Alpers,* 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457 (1950). There, the Court applied the rule of *ejusdem generis* to determine that phonograph records, a fairly new and increasingly prevalent technology at the time, though not specified in the federal obscenity statute's outdated list, could constitute "other matter." The Court's words then are relevant now: "The most important thing to be determined is the intent of Congress. The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent of Congress." *Id.* at 681–82, 70 S.Ct. 352.

It may be appropriate at this point to remark on the sloppiness with which the Government approached its duty in preferring charges and making its case at court-martial. It is the Government's failure to mirror carefully the language it chose in writing out the specification and preparing proposed instructions to that of the actual statute that gives appellant's appeal the most vitality. However, this does not absolve defense counsel of their own carelessness.

Despite these flaws, I fail to see how they could have misled appellant and his defense team or prejudiced him in any way. In *United States v. Felty,* 12 MJ 438, 442 (CMA 1982), this Court found that a "technical variance between the offense alleged and that which is established from an accused's own lips does not require setting aside the plea of guilty." There, the appellant pleaded guilty to escape from custody but was, in reality, guilty of escape from confinement, two "different offenses." *Id.* at 440. Included amongst the factors we considered to reach our decision was that the appellant

> believed that he was guilty of an escape; according to his answers during the providence inquiry, he *was* indeed guilty. There is no reason to believe that the variance impaired his ability to prepare for trial, and the finding of guilty, if affirmed, would protect him from prosecution on any other charge of escape arising out of the same course of conduct.

*Id.* at 442.

Though the wording of the Article 134 specification charging the possession of child pornography was not the same as that in the statute, the statute was properly referenced as part of the charge and should have been within easy grasp of both detailed defense counsel and individual defense counsel. Likewise, a copy of the statute was attached to the Government's proposed instructions.

In *United States v. Meyer*, 802 F.2d 348 (9th Cir.1986), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987), the appellant there made a similar argument to that of appellant here. In that case, the appellant was also charged under the child pornography statute, and the indictment also misstated the wording of the statute. The indictment used statutory language which had been amended just prior to the appellant's offense, stating an element of the crime was the "lewdness" of the exhibition depicted, not the "lasciviousness," as Congress had just adjusted it to read. *Id.* at 351. The Ninth Circuit rejected the appellant's argument, stating that it

> fail[ed] to see how the wording of the indictment impaired his defense. *See United States v. Pheaster*, 544 F.2d 353, 363 (9th Cir.1976), *cert. denied sub nom. Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977).... Appellant does not seriously suggest that he was confused as to the charges he had to meet, *see Pheaster*, 544 F.2d at 363, and under the circumstances the indictment's correct citation to the statute was adequate to inform him that lasciviousness was an element of the crime.

802 F.2d at 351.

The bottom line is that for the offenses to which appellant pleaded guilty, he could have faced a maximum punishment of a dishonorable discharge, 30½ years' * confinement, total forfeitures, a reduction to the lowest enlisted rank, and an unlimited fine. His decision to sign the pretrial agreement removed the possibility of a fine, and, in the end, his confinement amounted to only 42 months. He got the benefit of his bargain. No amount of after-the-fact legal maneuvering should be allowed to break that legitimate deal.

Because I find appellant's plea provident, I do not consider whether the substance of his defense is persuasive, an analysis best left to the factfinder. For these reasons, I would affirm.

## ON PETITION FOR RECONSIDERATION

The United States, appellee, petitioned this Court for reconsideration, citing various precedents relating to the construction of 18

USC § 2252(a). It also appears that the issue of the proper construction of 18 USC § 2252(a) has been raised in other cases presently pending in this Court and can be considered in the disposition of those cases. *United States v. Augustine*, No. 98-5026, and *United States v. Sapp*, No. 99-0260.

However, the United States did not cite any new authorities which might warrent reconsideration of this Court's earlier decision that appellant's pleas of guilty were improvident and that the findings and sentence based thereon should be set aside. 50 MJ 385, 390 (1999).

Accordingly, it is, by the Court, this 30th day of September 1999

ORDERED:

That the Petition for Reconsideration as it relates to the construction of 18 USC § 2252(a) is granted and the opinion of the Court is withdrawn insofar as it relates thereto. Reconsideration of the Court's prior decision setting aside the findings and sentence is denied. The Court reserves the issue concerning the proper construction of 18 UCS § 2252(a) for further consideration if raised in some other case, or if raised again in this case after further proceedings in the courts below.

### [AND]

That the second sentence of the first paragraph of Part IV is amended to read as follows:

> The finding of guilty of specifiaction 1 of Charge I and the sentence are **set aside.**

### [AND]

That the last sentence of the first paragraph of Part IV is amended to read as follows:

> A rehearing on **specification 1 of Charge I and the** sentence may be ordered.

SULLIVAN, Judge, dissenting:

I would order re–argument of this case. Important decisions from other federal circuit Court of Appeals were overlooked at our prior oral argument of this case. *United States v. Hall*, 12 F.3d 988, 998 (7th Cir. 1998); *United States v. Vig*, 167 F.3d 443, 448 (8th Cir.1999); *United States v. Michalec*, 1999 U.S.App. Lexis 141, 1999 WL 187374 (4th Cir.1999) (*see* 50 MJ 409).

---

\*. Counsel agreed on the record that the maximum confinement was 25½ years; however, a re-

calculation indicates that total confinement could have amounted to 30½ years.